## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

GIBSON GUITAR CORP.,

                Plaintiff,

v.

MITSUI SUMITOMO INSURANCE USA
INC., *and*

CONTINENTAL INSURANCE COMPANY,

                Defendants.

Civil Action No.

JURY DEMAND

## COMPLAINT

Plaintiff, Gibson Guitar Corp. ("Gibson"), for its Complaint against Defendants, Mitsui Sumitomo Insurance USA Inc. ("MSI") and Continental Insurance Company ("CNA"), states as follows.

### Introduction

1.    This is a first-party insurance coverage dispute arising out of a catastrophic $17 million property loss Gibson sustained at its Electric Division facility in Nashville, Tennessee as a result of the May 2010 heavy rains and ensuing flooding in and around greater Nashville. At the time of its loss, Gibson had primary and excess warehouse insurance for its finished goods, gear, work in progress and raw materials at its 641-643 Massman Drive building, providing it with not less than $25,000,000 in insured limits. MSI and CNA, however, have refused to cover Gibson's entire loss

### The Parties

2.    Plaintiff, Gibson Guitar Corp., is a Delaware corporation with its principal place

of business located at 309 Plus Park Boulevard, Nashville, Tennessee.

3.    Defendant Continental Insurance Company ("CNA") is an insurance company organized under the laws of the State of Pennsylvania with its principal place of business at 333 S. Wabash Ave., in Chicago, Illinois.

4.    Mitsui Sumitomo Insurance USA Inc. ("MSI") is an insurance company organized under the laws of the state of New York with its principal place of business at 15 Independence Boulevard, Warren, NJ.

## Jurisdiction and Venue

5.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1), in that the Complaint is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.    In addition, this Court has jurisdiction to award declaratory relief pursuant to 28 U.S.C. § 2201.

7.    This Court has jurisdiction over Defendants because they: (1) entered into contracts in this state to insure risks in Tennessee, (2) engaged in business within this state and (3) are licensed to sell insurance in this state.

8.    Venue is proper pursuant to 28 U.S.C. § 1391(a)(2), as the Complaint is brought within the judicial district in which a substantial part of the events giving rise to the Complaint occurred, and within which a substantial part of the property that is the subject of the Complaint is situated.

## Gibson's Marine Insurance, Warehouse Endorsement and Excess Stock Insurance

9.     The warehouse complex owned by Gibson at the center of this controversy is a single building with a space for manufacturing and a space for storage. For convenience purposes, the building (the "Massman Drive Facility") has two street addresses: 641 Massman Drive and 643 Massman Drive.  The Massman Drive Facility is a manufacturing space where Gibson manufactures its guitars and a storage area used to store manufactured stock (i.e., Gibson branded guitars) and other goods and merchandise.  Gibson treats this location as a single unit for purposes of valuing its contents and stock.

10.     Beginning in 2003, Gibson entered into a "stock throughput" marine insurance arrangement with CNA ("Marine Insurance Program") under which CNA agreed to  provide marine open cargo insurance which extended to warehouse/finished stock at specified locations, including Gibson's Electric Division.

11.     Beginning in 2004, MSI, as the excess insurer immediately above CNA's primary layer, entered into a contract of excess insurance in the form of a binder, effective as of January 1, 2010, denominated "Confirmation of Excess Stock Insurance" (the "MSI Binder"), which is further described below.

12.     Effective January 1, 2010, CNA issued a Marine Open Cargo insurance policy, number OC 24-4422 00 (the "Policy"), paid for by Gibson, providing primary insurance coverage for:

> Goods and/or merchandise and/or Property of every
> description incidental to the Assured's business consisting
> principally of, but not limited to musical instruments, raw
> materials and similar products.

13.     Upon information and belief, the Policy's "Conditions of Coverage" further states that:

Unless otherwise specified below, all goods and/or merchandise and/or property are insured:

(A) against all risks of physical loss or damage from any external cause whatsoever, except those risks that may be excluded by the F.C. & S. warranty S.R. and C.C. warranty and/or other warranties or exclusions specified in this policy, unless covered elsewhere herein, irrespective of percentage

14. The Policy contains an "Errors and Omissions' clause, which states:

This policy shall not be vitiated by any unintentional delay, error, omission or oversight in making any declaration that is required to be made under and provision contained in or endorsed on this policy provided a correct declaration is communicated to this Assurer as soon as practicable after the delay, error omission or oversight becomes known to the Assured's Corporate Risk Manager or equivalent, and premium paid, if required by this Assured.

15. The Policy contains a "Control of Damaged Goods" clause, which states:

Notwithstanding anything to the contrary contained elsewhere in this policy it is understood and agreed that in case of damage to goods and/or merchandise and/or property insured under the policy the Assured is to retain full and absolute discretion and control over the disposition of all such goods and/or merchandise and/or property. It is understood that the Assured shall be the sole judge as to whether disposal or sale of such goods and/or merchandise and/or property is detrimental to its interest. This assurer shall be given the opportunity to have a representative in attendance.

16. The Policy was subject to a Warehouse Endorsement that states:

[T]his policy is extended, subject to all terms and conditions, to cover goods and/or merchandise incidental to the business of the Assured while such goods and/or merchandise are at a warehouse and/or storage and/or processing facility.

Subject to a deductible of $25,000 per occurrence
This extension of coverage shall not attach for more than:

| Division | Address | City | State | Country | Zip | Limit |
|----------|---------|------|-------|---------|-----|-------|
| Electric | 641 Massman Dr. | Nashville | TN | USA | 37210 | $10,000,000 |
| Electric | 643 Massman Dr. | Nashville | TN | USA | 37210 | $5,000,000 |

17.    The MSI Binder states as follows:

> Effective: January 1, 2010 policy open and continuous until cancelled by either party giving Ninety (60) (sic) days notice.
> Assured: Gibson Guitar Corporation
> Limits of Liability: $15,000,000 in excess of $10,000,000 any one location, any one occurrence. (Stock only)
>    Locations
> - Baldwin Piano Plant, 900 Hwy,. #463 S. Trumann, AR 72472-9604
> - Electric, 641 Massman Dr., Nashville, TN 37210
> - Baldwin Dongbei, Bohai Street, Yinkou, Liaoning, China
> - Deutche Wurlitzer, Wurlitzer 6, Hullhorst, Germany
>
> Terms & Conditions: Subject to all other terms, clauses and conditions as per underlying policy, including amendments thereto or without notice and to follow absolutely all settlement. Such settlements being binding on all participating underwriters hereon.

## Treatment of the Insured Location

18.    That portion of the Massman Drive Facility denominated as 641 Massman is a 110,000 sq ft. manufacturing facility where Gibson manufactures and assembles its world-famous "Les Paul" branded Gibson electric guitars.

19.    That portion of the Massman Drive Facility denominated as 643 Massman is physically connected to 641 Massman, and is a 30,000 sq ft. finished goods storage area used to store finished stock (i.e. Gibson branded guitars) produced by the Electric Division.

20.    By the time Gibson's Marine Insurance Program incepted in or about 2003, Gibson was relying on Willis, including Willis' Marine Division (collectively, "Willis") as the

representative of the insurers.

21.     Since at least 2003 and continuing to the present, Willis has been provided with
extensive knowledge about Gibson's worldwide business operations, its physical locations, and
the values Gibson attaches to its finished goods, equipment, gear, work in progress, and raw
materials, all for the purpose of tailoring Gibson's insurance portfolio to its unique needs.

22.     At each successive renewal of the Marine Insurance Program, Gibson has
provided Willis with a single combined inventory value for the Massman Drive Facility to be
used for determining the appropriate coverage.

23.     By way of example, in 2009, Gibson prepared a Statement of Stock Values for
delivery to Willis in connection with the upcoming renewal of its Marine Insurance Program.  In
recognition that the Massman Drive Facility has been long regarded by Gibson as a single
location bearing two separate addresses, Gibson's "Statement of Stock Values" informed Willis
that Gibson assigned a combined stock/inventory value of $14,412,663  to 641 Massman, and $0
to 643 Massman.

24.     Willis has also been aware since at least 2003 that the value of the work in
progress, gear and raw materials in the manufacturing portion of the Massman Drive Facility
denominated as 641 Massman never exceed $10 million.  For obvious reasons of which Willis
was also aware, the majority of the "value" was in the storage portion of the facility,
denominated 643 Massman, which contained the finished goods (i.e. Gibson-branded electric
guitars) to be shipped to retail outlets for sale.

25.     Since at least 2004, Willis has provided both CNA and MSI (and other of
Gibson's insurers) with a wealth of information about Gibson's stock and inventory values,
insurance requirements and physical locations, including detailed information describing the

operations and physical plant characteristics of the Massman Drive Facility. These insurers underwrote Gibson's Marine Insurance Program on the basis of the extensive documentation and knowledge furnished to Willis by Gibson, supplemented by routine oral communications and directives from Willis, and direct communications between the carriers and Gibson.

26.     Commencing with the 2009 renewal, CNA made an internal business decision to limit its catastrophic exposure. To implement this change, CNA proposed to reduce its exposure at any single insured location under Gibson's Marine Insurance Program to $10 million.

27.     Gibson was not made aware of these changes, or alerted to them by Willis.

28.     In tandem with this business decision, CNA modified its Warehouse Endorsement form to limit coverage on any single "location" to $10 million, and to assign a "default value" of $5 million in limits to each insured location that was assigned a value by Gibson of less than $5 million.

29.     CNA failed to apprise Willis or Gibson that this modification would apply across-the-board to all Gibson locations, including at "zero-value" locations such as 643 Massman.

30.     Gibson was not made aware of these changes, or alerted to them by Willis.

31.     Due to miscommunications and/or errors by Willis and CNA, and contrary to Gibson's express intentions and expectations, CNA inexplicably described 641 Massman and 643 Massman as separate "line item" locations in the Warehouse Endorsement.

32.     Underwriting information including but not limited to Gibson's Statement of Stock Values, which was in the possession of Willis, CNA and MSI, indisputably showed that Gibson intended to obtain insurance for all of its stock, with a value of over $14 million, and to treat the Massman Drive Facility as a single unit.

33.     Unfortunately, as an unintended consequence of the alterations made to the

Marine Insurance Program, CNA arbitrarily assigned a value of $5 million to the stock in the 643 Massman area of the facility, leaving that "location" widowed from 641 Massman.

34. Notwithstanding this scrivener's error and the resulting unintended modification to Gibson's Marine Insurance Program, CNA continued to calculate Gibson's premium at 641-643 Massman based upon a single combined insured stock value of $14.4 million.

35. At the time MSI underwrote Gibson's excess stock insurance above CNA's $10 million limits, MSI was in possession of Gibson's Statement of Stock Values from which it had actual or constructive knowledge that Gibson treated the Massman Drive Facility as a single "location" with a combined $14.4 million stock value.

36. As a starting point for its underwriting, MSI erroneously relied upon the $5 million "default amount" attributed by CNA to 643 Massman. MSI compounded this error by mischaracterizing the Massman Drive Facility as consisting of two separate locations.

37. Owing to this misunderstanding and/or errors made by Willis, CNA and MSI, effective January 1, 2010, MSI issued an ambiguous Binder referencing "Electric, 641 Massman Dr., Nashville, TN 37210" as an insured location. This was clear scrivener's error because it was well known that Massman Drive Facility is comprised of the entire facility, bearing the 641 and 643 Massman addresses, not just 641 Massman. If the MSI coverage were to apply to the 641 Massman portion, any coverage MSI purported to offer was illusory inasmuch as MSI had actual or constructive knowledge from Willis, CNA and/or MSI's underwriting files that the manufacturing portion of the Massman Drive Facility, at 641 Massman, never contained stock, raw materials or work in progress worth in excess of $10 million. Under that scenario, Gibson would not have required excess stock insurance for losses over $10 million at that portion of the facility.

## The Insured Peril and Scope of the Loss

38.     On or about May 1-2, 2010, Nashville experienced two consecutive days of torrential rains. During this two day period, more than thirteen inches of rain fell in and around Nashville, doubling the previous 6.6 inch record Nashville two-day rainfall total on September 21, 1979.

39.     As a result of the unprecedented rain event, cresting floodwaters from swollen creeks and rivers inundated thousands of homes and business, including the Massman Drive Facility.

40.     As a result of water damage and intrusion, Gibson estimates it suffered a total loss of the building's contents, amounting to approximately $17 million. According to CNA's adjusters, the loss is apportioned as follows:  $6,300,000 at 641 Massman, and $11,020,000 at 643 Massman.

41.     On or about July 12, 2010, Willis advised MSI that CNA viewed its $10 million insured layer as exhausted, triggering MSI's obligation to adjust and pay Gibson's loss.

## CNA's Treatment of the Claim

42.     Willis timely transmitted a notice of loss to CNA on or about May 10, 2010, and subsequently prepared a proof of loss documenting the gear, work in progress, finished inventory and raw materials that were exposed to the floodwaters and adjudged by the insured to be unfit for use or sale.

43.     On June 8, 2010, Willis advised CNA under the "Errors and Omissions" clause in the Policy that an error had been made because of which Willis and/or CNA had unintentionally underreported Gibson's insured contents. The notice further advised MSI that the insured had always intended (and paid premium for) combined treatment of the Massman Drive Facility as a

single insured location such that losses above $10 million would fall within MSI's excess layer.

44.    Without prejudice to Gibson's rights, CNA has adjusted and begun paying the claim as though the Warehouse Endorsement referred to the Massman Drive Facility as a single combined location with contents exceeding CNA's $10 million limits.

45.    On or about July 12, 2010, CNA informed MSI that it views the primary insured limits as exhausted as a result of its intent to pay $10 million (less the self-insured retention) to its insured, Gibson.

46.    CNA has made a settlement offer to Gibson, consistent with the settlement provisions of the Binder, to treat the Massman Drive Facility as a single combined location and loss with an insured limit of $10 million.  If accepted by Gibson, this would result in exhaustion of CNA's primary insurance.

## MSI's Treatment of the Claim

47.    On June 8, 2010, Willis advised MSI under the "Errors and Omissions" clause in the Policy that an error had been made because of which Willis and/or CNA and/or MSI had unintentionally underreported Gibson's insured contents.  The notice further advised MSI that the insured had always intended (and paid premium for) combined treatment of the Massman Drive Facility as a single insured location such that losses above $10 million would fall within MSI's excess layer.

48.    MSI failed entirely to respond until more than four months had elapsed from the notice of loss.  On September 30, 2010, Gibson received correspondence from counsel engaged by Mitsui alleging that MSI was "continuing its investigation into this claim."  This was the first response from, or on behalf of, Mitsui responding to the notice of loss.

49.    Thereafter, Mitsui hired the same adjuster CNA previously engaged in its claims

process. Mitsui failed to investigate the claim and failed to provide the insured with instructions as to whether it would authorize the destruction of any contents at the Massman Drive Facility, thereby waiving its inspection right and binding itself to the aggregate loss estimate of approximately $17 million, determined by CNA.

50. Despite never issuing the policy contemplated by the Binder, MSI has refused to follow the proposed settlement, as required by the language of its Binder: "Subject to all other terms, clauses and conditions as per underlying policy, including amendments thereto or without notice and to follow absolutely all settlement. Such settlement being binding on all participating underwriters hereon."

51. Acting in bad faith, MSI has clung to the ambiguous and faulty language of the Binder, literally interpreting the Binder to provide excess coverage for an over-insured location and thereby denying the insured's intention and desire to obtain excess coverage.

52. Acting in bad faith, MSI representatives and its attorneys travelled to Nashville and attempted to depose the insured about its losses and the physical characteristics of the building to obtain evidence from which it could deny the claim and deny the insured the benefit of its bargain.

53. Acting in bad faith, MSI instructed its adjuster to ignore any losses at 643 Massman and forego inspection of that "location," resulting in an unfair and repugnant demonstration masquerading as proper claims handling.

**Gibson is Entitled to Payment of its Loss Under the Policy.**

54. The water damage and inundation to the finished goods, gear, work in progress and raw materials amount to a covered $17 million loss under the Policy and fall plainly within the all risk coverage afforded by the Policy, the extension of coverage under the Warehouse

Endorsement, and the MSI Binder.

55. Gibson has fulfilled all of its obligations and satisfied all conditions precedent under the Policy and Binder.

56. No exclusions or unfulfilled conditions exist to bar coverage for Gibson's claim.

<u>Count I – Breach of Contract or Coverage by Estoppel</u>
(Against MSI and CNA)

57. Gibson incorporates by reference each of the allegations set forth in paragraphs 1 through 56 above as if expressly set forth herein.

58. Gibson asked Willis to procure insurance coverage of at least $25 million for the Massman Drive Facility. Willis did so, and Gibson paid the appropriate premiums for the Policies.

59. Gibson has fulfilled all of its obligations and satisfied all conditions precedent under the Policies.

60. No exclusions or unfulfilled conditions exist to bar coverage for Gibson's claim.

61. The damage caused by the flooding amounts to at least a $17 million loss, including without limitation inventory and gear related to its instruments and brand, such as accessories and apparel, and falls plainly within the coverage afforded by the Policies.

62. Further, or in the alternative, Willis was at all times the agent of CNA and MSI when procuring the coverage requested by Gibson. Gibson reasonably relied on Willis' representations that CNA and MSI had provided $25 million of coverage for the Massman Drive Facility, and Gibson paid the appropriate premiums. CNA and MSI are estopped to deny that the loss is covered in its entirety.

63. MSI and CNA breached the Policies by failing to pay the entire loss.

64. As a proximate result of the breaches of contract by CNA and MSI, Gibson has

been damaged in an amount to be proven at trial.

## Count II – Alternative Count for Reformation
### (Mistake in Expression – against CNA)

65.     Gibson incorporates by reference each of the allegations set forth in paragraphs 1 through 64 above as if expressly set forth herein.

66.     In the alternative, if, as written, the Policy and the Binder do not express the parties' intentions and expectations that Gibson would have $25 millions of coverage for the entire Massman Drive Facility, then the Policy contains a mistake in expression.

67.     Specifically, as noted above, CNA, Willis and Gibson mutually understood and agreed that 641-643 Massman Drive was a single insured location with at least $14.4 million in stock, gear, finished goods and raw materials.

68.     CNA, Willis and Gibson intended this understanding and agreement about the combined insured location and contents value to be expressed in the Policy.

69.     The Policy differs from the understanding of CNA, Willis and Gibson in this regard.

70.     The variation between the Policy and the agreement and understanding between CNA, Willis and Gibson about the combined insured location and contents value to have been expressed in the Policy is not the result of gross negligence on the part of Gibson.

71.     Due to this mistake in expression, the Policy should be reformed to reflect the understanding that the Massman Drive Facility was a single insured location with at least $14.4 million in stock, gear, finished goods and raw materials.

## Count III – Alternative Count for Reformation
### (Mutual Mistake/Scrivener's Error – against CNA)

72.     Gibson incorporates by reference each of the allegations set forth in paragraphs 1

through 71 above as if expressly set forth herein.

73.     In the alternative, if, as written, the Policy and the Binder do not express the parties' intentions and expectations that Gibson would have $25 millions of coverage for the entire Massman Drive Facility, then the Policy is the result of a mutual mistake in that CNA, Willis and Gibson intended and agreed that 641-643 Massman Drive was a single insured location with at least $14.4 million in stock, gear, finished goods and raw materials.

74.     CNA, Willis and Gibson intended this understanding and agreement about the combined insured location and contents value to be expressed in the Policy.

75.     Due to scrivener's error on the part of CNA and/or Willis, the Policy differs from the understanding of CNA, Willis and Gibson in this regard.

76.     Due to mutual mistake, the Policy should be reformed to reflect the understanding that the Massman Drive Facility was a single insured location with at least $14.4 million in stock, gear, finished goods and raw materials.

## Count IV – Alternative Count for Reformation
## (Mistake in Expression – against MSI)

77.     Gibson incorporates by reference each of the allegations set forth in paragraphs 1 through 76 above as if expressly set forth herein.

78.     In the alternative, if, as written, the language of the Binder does not express the parties' intentions and expectations that Gibson would have $25 millions of coverage for the entire Massman Drive Facility, then the Binder contains a mistake and does not correctly express the intentions and expectations of the parties.

79.     MSI, CNA, Willis and Gibson mutually understood and agreed that the Massman Drive Facility was a single insured location with at least $14.4 million in stock, gear, finished goods and raw materials.

80. MSI, CNA, Willis and Gibson intended this understanding and agreement about the combined insured location and contents value to be expressed in the Binder.

81. The Binder differs from the understanding of MSI, Willis and Gibson in this regard.

82. The variation between the Binder and the agreement and understanding between MSI, Willis and Gibson about the combined insured location and contents value to have been expressed in the Binder is not the result of gross negligence on the part of Gibson.

83. Due to this mistake in expression, the Binder should be reformed to reflect the understanding that the insured location is "Electric 641-643 Massman Drive, Nashville Tennessee" and that MSI's insurance attaches at that location in excess of the $10 million CNA limits.

### Count V – Alternative Count for Reformation
### (Mutual Mistake/Scrivener's Error – against MSI)

84. Gibson incorporates by reference each of the allegations set forth in paragraphs 1 through 83 above as if expressly set forth herein.

85. In the alternative, if, as written, the language of the Binder does not express the parties' intentions and expectations that Gibson would have $25 millions of coverage for the entire Massman Drive Facility, then the Binder is the result of a mutual mistake in that MSI, Willis and Gibson intended and agreed that the Massman Drive Facility was a single insured location with at least $14.4 million in contents in gear, finished goods and raw materials.

86. MSI, Willis and Gibson intended this understanding and agreement about the combined insured location and contents value to be expressed in the Binder.

87. Due to scrivener's error on the part of MSI and/or Willis, the Binder differs from the understanding of MSI, Willis and Gibson in this regard.

- 15 -

88.     Due to mutual mistake, the Binder should be reformed to reflect the understanding that the insured location is "Electric 641-643 Massman Drive, Nashville Tennessee" and that MSI's insurance attaches at that location in excess of the $10 million CNA limits.

## Count VI – Declaratory Relief
## (Against CNA and MSI)

89.     Gibson incorporates by reference each of the allegations set forth in paragraphs 1 through 88 above as if expressly set forth herein.

90.     CNA has proposed to settle Gibson's claim, consistent with the MSI Binder, to amend the Policy and to treat the loss at the Massman Drive Facility as a combined $10 million loss at a single location and pay its limits, triggering MSI's obligation to provide excess insurance.

91.     Under the MSI Binder, MSI is subject to all terms and conditions "as per underlying policy" is obliged to "follow absolutely all settlement" and must accept any amendments to the Policy without notice.  Under the Binder, a settlement by CNA  is "binding on all participating underwriters hereon," including MSI,

92.     Accordingly, Gibson requests that the Court enter an Order ratifying the proposed settlement between CNA and Gibson, authorizing Gibson to accept the settlement, and effectuating the language of the Binder, which obliges MSI to respond to follow the settlement, amend the Binder without notice with respect to the covered location at the Massman Drive Facility, and pay Gibson its losses up to the Binder's $15 million limits.

## Count VII – Declaratory Relief
## (Against CNA and MSI)

93.     Gibson incorporates by reference each of the allegations set forth in paragraphs 1

- 16 -

through 92 above as if expressly set forth herein.

94.     Under the terms of the Policy and Binder, CNA and MSI must accept, acknowledge and act promptly upon a properly reported "Error or Omission" in connection with the undervaluation of the insured contents of the Massman Drive Facility as a single combined location with a contents value of at least 14.4 million.

95.     Willis timely and promptly transmitted notice of the error on June 8, 2010.

96.     By operation of Tennessee law, Willis was acting as CNA and MSI's agent in placing, ordering and binding Gibson's Marine Insurance Program. Willis failed properly to communicate Gibson's expectations and Willis' understanding from the insured that the Massman Drive Facility be treated as a combined single location with at least $14.4 million in contents.

97.     Based on Willis' error, CNA and MSI are estopped from denying that Gibson is entitled to coverage under the Policy and Binder.

### Count VIII – Declaratory Relief
### (Against MSI)

98.     Gibson incorporates by reference each of the allegations set forth in paragraphs 1 through 97 above as if expressly set forth herein.

99.     MSI's Binder is ambiguous in that it refers to the insured location as "Electric 641 Massman Dr. Nashville, TN 37210." This location is indeed a reference to the Electric Division of Gibson, but this location also encompasses that portion of the Massman Drive Facility which is connected to and forms a part of 641 Massman but is denominated as 643 Massman Drive for convenience purposes.

100.    Due to the $17 million in loss Gibson has presented, as adjusted, CNA's insured

- 17 -

limits have been exhausted and MSI's excess layer is triggered and must respond.

101.    But for MSI's misinterpretation and/or strained view of the ambiguous terms and conditions of its Binder, it would be required to pay Gibson's losses.

102.    An actual and justiciable controversy exists between Gibson, and MSI regarding their respective duties and obligations under the Policy.

103.    This Court should order and decree that the insured location reference is ambiguous, must be construed in Gibson's favor, and is in fact a reference to the Massman Drive Facility.

## Count IX – Alternative Count for Declaratory Judgment
### (CNA)

104.    Gibson incorporates by reference each of the allegations set forth in paragraphs 1 through 103 above as if expressly set forth herein.

105.    The CNA Policy and/or Warehouse Endorsement is ambiguous in that a schedule included thereon refers to separate buildings at 641 Massman Drive and 643 Massman Drive, ascribing a total amount of coverage of $15 million with separate insured limits. This $15 million limit is apportioned in an ambiguous manner because these "locations" are actually a single building. Thus, a total unapportioned insured limit of $15 million at the Massman Drive Facility should be available to Gibson, construing this ambiguity in its favor.

106.    CNA had actual or constructive knowledge that the Massman Drive Facility was a single insured location with at least $14.4 million in contents in gear, finished goods and raw materials.

107.    By operation of Tennessee law, Willis was acting as CNA's agent in placing, ordering and binding Gibson's Marine Insurance Program. Willis may have failed properly to communicate Gibson's expectations and Willis' understanding from the insured that the

- 18 -

Massman Drive Facility be treated as a combined single location with at least $14.4 million in contents, creating the ambiguity in the Policy for which Gibson has presented a claim for coverage.

108.    CNA is estopped from asserting that the Policy does not respond to the loss in the sum of $15 million.

109.    An actual and justiciable controversy exists between Gibson and CNA regarding their respective duties and obligations under the Policy.

110.    If the MSI Binder does not respond to this loss, CNA is obliged to provide up to $15 million in primary coverage under the terms and conditions of its Policy and his Court should order and decree CNA to pay Gibson $15 million because CNA's reference to 641-643 Massman as two buildings is ambiguous.

## Count X – Bad Faith
### (Against MSI - Violation of Tennessee Consumer Protection Act)

111.    Gibson incorporates by reference each of the allegations set forth in paragraphs 1 through 110 above as if expressly set forth herein.

112.    MSI's conduct with regard to the handling of Gibson's request for coverage under the Binder for its loss is outrageous, unfair and violates numerous provisions of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*

113.    MSI's failures to reasonably honor its contractual, statutory, administrative and common law duties to Gibson constitute unfair and deceptive methods of competition and/or unfair or deceptive practices in the business of insurance.

114.    MSI's unfair and deceptive practices occurred in trade or commerce.

115.    MSI's unfair and deceptive practices were willful and knowing.

116.    As a result of MSI's Consumer Protection Act violations, Gibson has suffered

harm, prejudice and damages.

117.     Gibson is entitled to recover all damages relating to MSI's Consumer Protection Act violations, including money damages, interest as an element of damage, treble damages, and prejudgment interest.

**Count XI – Bad Faith Failure to Pay Insurance Loss**
**(Tenn. Code Ann. § 56-7-105 – Against MSI)**

118.     Gibson incorporates by reference each of the allegations set forth in paragraphs 1 through 117 above as if expressly set forth herein.

119.     The damage to the property amounts to a covered loss of at least $17 million under the Policy and the Binder and falls within the coverage afforded by the Policy and the Binder.

120.     Gibson and MSI entered into a contract of excess insurance in the form of the MSI Binder.  Gibson asked Willis to procure insurance coverage for at least $25 million at the Massman Drive Facility, including $15 million of excess coverage from MSI.  Willis represented that it did so, and Gibson reasonably relied on that representation.  Willis was at all times the agent of MSI.  MSI is estopped to deny that the loss is covered in its entirety.

121.     MSI refused to pay the loss within sixty (60) days after a demand was made. MSI's refusal to pay the loss was not in good faith as MSI engaged in a pattern of bad-faith conduct in an attempt to defeat Gibson's rights under the Binder, including, without limitation by: (1) refusing to pay the loss despite actual or constructive knowledge that the loss was covered by its policy with Gibson, (2) sending MSI representatives and its attorneys to Nashville and attempting to depose the insured about its losses and the physical characteristics of the building as a pretext to obtain evidence from which it could deny the claim and deny the insured the benefit of its bargain, and (3) instructing its adjuster not to inspect Gibson's warehouse at

- 20 -

that location.

122.    MSI's bad-faith failure to pay caused Gibson to incur additional expense, loss or injury including attorney fees.  For MSI's bad faith conduct, Gibson is entitled to compensatory damages and, in addition to the loss and any applicable interest, a sum of twenty-five percent on the liability for the loss.

## Prayer For Relief

**WHEREFORE**, Plaintiff, Gibson Guitar Corp., prays this Court for the following relief:

1.    With respect to Count I, Gibson requests that the Court award Gibson money damages of at least $17 million, or such other and different sums as are proved at trial.

2.    With respect to Count II, Gibson requests that the Court enter an Order in Gibson's favor reforming the Policy to reflect the understanding and agreement that the Massman Drive Facility was a single insured location with available insurance limits of $15 million responding to Gibson's loss.

3.    With respect to Count III, Gibson requests that the Court enter an Order in Gibson's favor reforming the CNA Policy to reflect the understanding and agreement that the Massman Drive Facility was a single insured location with available insurance limits of at least $15 million.

4.    With respect to Count IV, Gibson requests that the Court enter an Order in Gibson's favor reforming the Binder to reflect the understanding and agreement that the Massman Drive Facility was a single insured location which is covered by MSI's Binder containing agreed-upon excess insurance up to $15 million responding to Gibson's loss.

5.     With respect to Count V, Gibson requests that the Court enter an Order in Gibson's favor reforming the Binder to reflect the understanding and agreement that the Massman Drive Facility was a single insured location which is covered by MSI's Binder containing agreed-upon excess insurance up to $15 million responding to Gibson's loss.

6.     With respect to Count VI, Gibson requests that the Court enter a decree declaring, authorizing and recognizing a $10 million settlement of Gibson's insurance claim between CNA and Gibson which obliges MSI to tender to Gibson its losses up to $15 million in limits excess of $10 million in insured limits in order to follow the settlement terms.

7.     With respect to Count VII, Gibson requests that the Court enter a decree in Gibson's favor declaring and ordering that the contents of the Massman Drive Facility were underreported.  The Court should further Order that as a result of this error by Willis, CNA and MSI are estopped to deny less than $25 million in coverage for Gibson's losses at the Massman Drive Facility.

8.     With respect to Count VIII, Gibson requests that the Court order and decree that the insured location reference in the Binder is ambiguous, must be construed in Gibson's favor, and is in fact a reference to the the Massman Drive Facility, which is covered for up to $15 million excess of $10 million provided by CNA.

9.     In the alternative -- and only in the event the MSI Binder does not provide excess insurance for Gibson's loss -- with respect to Count IX, Gibson requests that the Court order and decree that the insured location reference in the CNA Policy is ambiguous, that this language in the Policy must be construed in Gibson's favor, that the reference is in fact a reference to the Massman Drive Facility, and that CNA is responsible for at least $15 million in losses as primary insurer.

10. With respect to Count X, Gibson requests that the Court enter an Order awarding Gibson money damages of not less than $7 million, prejudgment interest on all liquidated amounts, statutory treble damages under the Tennessee Consumer Protection Act, and Gibson's actual attorney's fees and costs.

11. With respect to Count XI, the Court should enter an Order awarding Gibson money damages of not less than $7 million, prejudgment interest on all liquidated amounts, and an additional sum equal to twenty-five percent on the liability for the loss.

12. For such other and further relief as this Court may deem just and proper.

## **Jury Demand**

Gibson demands a trial by jury on all issues so triable.

Respectfully submitted,

_Steven A. Riley (signature)_

Steven A. Riley (BPR# 6258)
Timothy G. Harvey (BPR# 021509)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
(615) 320-3700
sriley@rwjplc.com
tharvey@rwjplc.com

*Attorneys for Gibson Guitar Corp.*

Of Counsel:

Peter M. Gillon
Geoffrey J. Greeves
James P. Bobotek
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, NW
Washington, D.C. 20037-1122
Tel.: (202) 663-8000
Fax: (202) 663-8007
E-mail: peter.gillon@pillsburylaw.com
        geoffrey.greeves@pillsburylaw.com
        james.bobotek@pillsburylaw.com

*Attorneys for Gibson Guitar Corp.*